* * * * * * * * * * *
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * * RULING ON MOTIONS
Plaintiff's motion to have certain documents added to the record is granted. Defendants' motion to obtain copies of other Industrial Commission files is denied. Industrial Commission files are not public records and only parties to a given file and their legal representatives are entitled to have access to those files.
 * * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. The date of the accident in this matter was March 11, 2002.
2. On that date, defendant-employer had workers' compensation insurance coverage through defendant-carrier.
3. On all relevant dates, defendant-employer employed three or more employees.
4. Plaintiff's claim was accepted as compensable through an Industrial Commission Form 60 completed on December 23, 2002. Plaintiff has received weekly benefits in the amount of $431.32 beginning on March 12, 2002, and continuing through the date of the hearing before the Deputy Commissioner.
5. All parties are properly before the Industrial Commission and the Industrial Commission has subject matter jurisdiction over this claim.
6. All parties have been correctly designated and there is no question as to misjoinder or non-joinder of parties.
7. At the hearing, the parties submitted a Packet of Various Stipulated Documents, which was admitted into the record and marked as Stipulated Exhibit 1, and which included a Pretrial Agreement, Industrial Commission forms consisting of Forms 18, 19, and 60, an Industrial Commission Form 24 filed December 23, 2002 and accompanying documents, an Industrial Commission Form 24 filed March 5, 2003 and accompanying documents, Defendants' Motion to Compel Release of Prior Workers' Compensation Files and accompanying documents, and Plaintiff's Answers to Defendants' Pre-hearing Interrogatories. The parties also submitted a Packet of Medical Records, which was admitted into the record and marked as Stipulated Exhibit 2.
8. The issues to be determined are as follows:
 a. whether plaintiff obtained his employment with defendant based upon his material misrepresentations of fact and, if so, whether the alleged employer-employee relationship between the parties is void;
 b. whether the Industrial Commission Form 60 in the present case should be set aside pursuant to N.C. Gen. Stat. §§ 97-17 and 97-82;
 c. whether plaintiff's earning capacity can be based upon wages obtained through material misrepresentations of fact;
 d. whether plaintiff's workers' compensation benefits were obtained through fraud and, if so, whether defendants are entitled to reimbursement for payments made in this claim based upon plaintiff's fraudulent procurement of workers' compensation benefits;
 e. whether defendants have rebutted any evidence of disability in the present case based upon plaintiff's medical release to his pre-injury work restrictions; and,
 f. whether N.C. Gen. Stat. § 97-33 precludes plaintiff from receiving any additional workers' compensation benefits in the present case.
 * * * * * * * * * * * EVIDENTIARY MATTERS
At the hearing before the Deputy Commissioner, defendants submitted the following:
 a. Defendant-employer's Standard Orientation Packet, which was admitted into the record and marked as Defendants' Exhibit 1;
 b. Plaintiff's Employment File, which was admitted into the record and marked as Defendants' Exhibit 2, and;
 c. A Compromise Settlement Agreement dated May 4, 1999, which was admitted into the record and marked as Defendants' Exhibit 3.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and evidence of record and reasonable inferences flowing therefrom, the Full Commission enters the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 49 years old. He was born October 9, 1953.
2. On March 11, 2002, plaintiff sustained an injury by accident to his back while cranking a dolly in the course and scope of his employment with defendant-employer. Plaintiff experienced a pinching sensation in his back, and had significant pain in the left lower side of his back above his belt line. Additionally, over time, plaintiff developed problems with his legs.
3. Plaintiff reported this specific traumatic incident to defendant-employer's dispatcher, Ms. Alice Cable, approximately fifteen to twenty minuets after it occurred.
4. The compensability of this incident was admitted by defendants through the filing of an Industrial Commission Form 60. Pursuant to this Form 60, plaintiff has received ongoing total disability benefits at the rate of $431.32 per week, with payments commencing as of March 12, 2002.
5. On the date of his injury by accident, plaintiff sought medical treatment at Urgent Medical and Family Care in Greensboro. At that facility, plaintiff was first examined by a Dr. S. Daub, who noted an injury to the lumbar spine. Plaintiff was next examined by a Dr. R. Doolittle, who noted that plaintiff was experiencing radicular pain, and released him to light duty work with restrictions of no lifting more than five pounds, no bending, squatting or kneeling, no prolonged standing or sitting and with the provision that plaintiff be permitted to change positions frequently. Dr. Doolittle also referred plaintiff to Dr. Frank Aluiso.
6. Dr. Aluiso initially examined plaintiff on March 26, 2002, and diagnosed him as having a significant back strain or sprain, ordered an MRI and medically excused him from work. The MRI revealed a broad based disc herniation at the L5-S1 level impinging on the right side nerve root and disc degeneration at L4-5 level with a small protrusion. With this diagnosis, Dr. Aluiso prescribed medications, and referred plaintiff to physical therapy. At that time Dr. Aluiso did not recommend surgery for plaintiff. In August 2002, plaintiff returned to Dr. Aluiso and reported some improvement from therapy but that his improvement had reached a plateau. Dr. Aluiso then referred plaintiff for nerve root injections with Dr. Richard Ramos.
7. Dr. Ramos first performed the recommended injections for plaintiff on August 21, 2002. Plaintiff returned to Dr. Ramos on September 19, 2002, and reported that his symptoms had improved by approximately thirty (30) percent, which Dr. Ramos found to be significant. Dr. Ramos's diagnosis at that time was that plaintiff had degenerative disc disease at the L4-5 and L5-S1 levels. Dr. Ramos also opined that it would be therapeutic for plaintiff to return to work, and therefore, he recommended a gradual return to work. Plaintiff returned to Dr. Ramos on October 17, 2002, at which time Dr. Ramos found that plaintiff was experiencing persistent low back pain secondary to his degenerative disc disease. As of the October 17, 2002, examination, plaintiff had not returned to work. Dr. Ramos then recommended that plaintiff follow the recommendations set forth in a 1996 functional capacity evaluation of plaintiff that had indicated plaintiff was capable of working in a light to medium duty position. As of October 2002, Dr. Ramos was not of the opinion that plaintiff's condition warranted a referral to a surgeon.
8. On December 23, 2002, defendants filed an Industrial Commission Form 24 Application to Terminate Compensation, contending that plaintiff had refused an offer of suitable employment. That Form 24 was disapproved by Order filed February 3, 2003. Defendants then filed a Motion to Reconsider the February 3, 2003, Order, contending that plaintiff's claim should be barred due to false statements that he had made in the hiring process. That motion to reconsider was treated as a new Form 24, and an order was filed on April 22, 2003, indicating that the Special Deputy Commissioner could not reach a decision. The matter was then put on the hearing docket for a hearing before a Deputy Commissioner.
9. At the hearing before the Deputy Commissioner, defendants presented evidence that plaintiff had applied for a job with defendant-employer on June 1, 2000, had been hired conditionally, and had been given a medical questionnaire to complete to ensure he had the physical ability to perform its truck driving job. According to Mr. Gerald Robertson, defendant-employer's safety and recruiting director, if information indicated that a new hire would be unable to perform the job, efforts would then be made to accommodate that new hire, as required by the federal Americans with Disabilities Act.
10. In completing the medical questionnaire, plaintiff made no reference to prior back injuries he had had or to workers' compensation claims associated with those injuries. While his responses to most of the questions were either accurate or ambiguous, the negative answers to the direct questions as to whether he had ever had a backache or made a workers' compensation claim were clearly incorrect. Robertson testified that plaintiff would have been hired and given the job, even if he had answered all the questions accurately. Robertson further testified that the question about prior worker's compensation claims was superfluous.
11. Additionally, Dr. Tate Rogers performed a physical examination required by the North Carolina Department of Transportation for plaintiff on February 7, 2002. At the time of this examination, Dr. Rogers was not aware of plaintiff having any pre-existing back problems, restrictions, or permanent partial disability ratings. Although Dr. Rogers testified at his deposition that, had he known of plaintiff's full medical history, there was a chance he would not have signed the Department of Transportation card, the Full Commission gives such evidence little weight in assessing the impact of plaintiff's failure to disclose his full medical history, given the testimony of Robertson set forth above and the fact that plaintiff was able to perform all of the duties of the job as a truck driver, including all required lifting, without any accommodations for the period from June 2000 to March 11, 2002.
12. Doctors Ramos, Aluiso, and Rogers all testified, and the Full Commission finds as fact, that plaintiff's prior back problems did not increase his risk of sustaining the type of injury he sustained on March 11, 2002.
13. As for his current condition, Dr. Ramos testified that plaintiff's current physical limitations are substantially similar to those that were derived from the functional capacity evaluation plaintiff had received in 1996, which was read at the time to preclude work as a truck driver, such that the treating physician had recommended re-training for work that plaintiff had not performed previously. Dr. Ramos specifically testified, and the Full Commission finds as fact, that plaintiff is no longer able to perform his erstwhile trucking job with defendant-employer.
14. The Full Commission finds that, as of the time of the hearing before the Deputy Commissioner, plaintiff was in need of retraining in employment that he has not done before, because he is unable to do anything he has previously done for a living and will be unable to work without first getting that training. Accordingly, and based upon the totality of the credible medical and lay evidence of record, the Full Commission finds that plaintiff is currently unable to return to work and will require training and vocational assistance before he will be able to perform other work. It follows that a job search now would be futile.
15. Despite the likely futility of a job search, plaintiff has been searching for jobs within the areas in which he has experience, to wit, truck driving. Plaintiff's search has so far been unsuccessful.
16. Defendants assert that plaintiff's job search has been unreasonable. However, while plaintiff suspected that he might be unable to perform the trucking jobs he was seeking, he was not certain, and he was willing to try. In fact, such an attitude following plaintiff's prior back problems led to nearly two years of successful employment with defendant-employer, until plaintiff's unrelated March 2002 injury. Furthermore, the reason that plaintiff focused his job search on trucking jobs was that those were the only ones in which he had any experience or qualifications. Plaintiff has sought employment in fields in which he does have the skills and has been unable to obtain a job because of his compensable injury. Rather than rendering plaintiff's job search "unreasonable," plaintiff's actions instead demonstrate his ongoing disability.
17. Based upon the totality of the credible medical and lay evidence of record, defendants have failed to produce sufficient evidence upon which to find that plaintiff's ongoing benefits should be suspended or terminated.
18. The Full Commission specifically rejects defendants' contention that, because Dr. Ramos released plaintiff to work in October 2002 with physical restrictions based on plaintiff's 1996 FCE, it follows that plaintiff was no more disabled in October 2002 than he had been when he began working for defendant-employer in 2000. Defendants' contention is belied by the fact that, at the time plaintiff was employed by defendant-employer in 2000, plaintiff was clearly able to exceed the physical restrictions set forth in the 1996 FCE, since plaintiff performed without difficulty job requirements exceeding those restrictions for nearly two years, until suffering the unrelated March 2002 injury. As Dr. Ramos testified, and as the Full Commission has found as fact, plaintiff is no longer able to perform his erstwhile job duties following his March 2002 injury. It follows that, despite Dr. Ramos's adoption of the restrictions set forth in the 1996 FCE, plaintiff's ability to work has plainly been impacted negatively by his March 2002 injury.
19. Clincher settlement agreements call for payment of undifferentiated lump sums of money for purposes of resolving all issues in claims. The amounts paid cannot realistically be considered the equivalent of accelerated payments of compensation for total disability. Accordingly, defendants' argument that they are entitled to credit against the compensation for which they are liable, based on payments that were made to plaintiff in prior settlements of prior claims, is rejected.
20. The Full Commission finds that defendants' appeal of the issue of plaintiff's disability was not undertaken without reasonable ground. Accordingly, the Full Commission need not address the reasonableness of defendant's request that the Commission decline to follow the guidance of the North Carolina Court of Appeals as to whether North Carolina law provides a defense to workers' compensation claims on the ground of misrepresentation or falsification of information by the injured worker in obtaining employment.
 * * * * * * * * * * *
Based on the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. North Carolina law does not provide a defense to workers' compensation claims on the ground of misrepresentation or falsification of information by the injured worker in obtaining employment. See Hooker v. Stokes-Reynolds Hospital/NorthCarolina Baptist Hosp., Inc., 161 N.C. App. 111, 587 S.E.2d 440
(2003), disc. rev. denied, 358 N.C. 234, 594 S.E.2d 192 (2004). Moreover, and despite such case law, defendants have failed to demonstrate any causal relationship between plaintiff's misrepresentations and either plaintiff's employment or plaintiff's injury. Accordingly, the Commission rejects defendants' contention that plaintiff's ongoing benefits should be terminated or that the claim should be voided upon grounds of misrepresentation by plaintiff in obtaining employment. Id.; N.C. Gen. Stat. § 97-18.
2. Under North Carolina law, plaintiff has the burden of demonstrating his ongoing disability:
 The burden is on the employee to show that he is unable to earn the same wages he had earned before the injury, either in the same employment or in other employment. The employee may meet this burden in one of four ways: (1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.
Russell v. Lowes Product Distribution, 108 N.C. App. 762, 765,425 S.E.2d 454, 457 (1993) (citations omitted). Plaintiff has satisfied prongs (2) and (3) of the test set forth in Russell by demonstrating that (a) he has been unsuccessful in his efforts to obtain employment in the areas in which he has work skills and experience, to wit, truck driving; and (b) a job search for work outside the area of truck driving would be futile without vocational re-training, because of plaintiff's lack of relevant training and work experience. Accordingly, Plaintiff has produced sufficient evidence upon which to conclude that his disability continues and that he is currently unable to secure gainful employment absent the previously recommended vocational re-training. Id.
3. Because clincher settlement agreements call for payment of undifferentiated lump sums of money for purposes of resolving all issues in claims, and because the amounts paid cannot realistically be considered the equivalent of accelerated payments of compensation for total disability, defendants' contention that they are entitled to credit against the compensation for which they are liable, based on payments that were made to plaintiff in prior settlements of prior claims, is rejected. N.C. Gen. Stat. § 97-33.
4. As the result of his admittedly compensable March 11, 2002, injury by accident, plaintiff continues to be entitled to have defendants pay him ongoing total disability compensation at the rate of $431.32 per week until such time as he returns to work, or until further Order of the Commission. N.C. Gen. Stat. §97-29.
5. As the result of his admittedly compensable March 11, 2002, injury by accident, plaintiff is entitled to have defendants pay for all related medical and vocational rehabilitative expenses incurred or to be incurred. N.C. Gen. Stat. §§ 97-25, 97-25.1.
6. The Full Commission concludes, based upon the totality of the circumstances of this case, that defendants have not acted in such a manner as to warrant the imposition of sanctions or fees pursuant to N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Defendants shall continue to pay to plaintiff ongoing total disability compensation at the rate of $431.32 per week until such time as he returns to work, or until further Order of the Commission. This compensation is subject to the attorney's fee approved herein.
2. Defendants shall pay for all related medical and vocational rehabilitative expenses incurred or to be incurred by plaintiff as the result of his admittedly compensable March 11, 2002, injury by accident.
3. Defendants shall also make payment to counsel for plaintiff, on plaintiff's behalf, to reimburse plaintiff's attorney for the advanced cost of the copies of the transcripts of the medical depositions, upon presentation of copies of the bills for said transcript copies.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded herein is approved for counsel for plaintiff. Defendants shall pay this fee by forwarding every fourth check directly to counsel for plaintiff.
5. Defendants shall pay the costs.
This 26th day of June 2006.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/_________________ PAMELA THORPE YOUNG COMMISSIONER
DISSENTING:
 S/____________ BUCK LATTIMORE CHAIRMAN